IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO MARROQUIN,<br><br>    Petitioner,<br><br>  vs.<br><br>A.P. KANE,<br><br>    Respondent. | No. C 05-2890 MJJ (PR)<br><br>**ORDER DENYING PETITION FOR<br>A WRIT OF HABEAS CORPUS** |

Petitioner, a California prisoner incarcerated at the Correctional Training Facility and proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2002 decision by the California Board of Parole Hearings ("Board")[1] finding him unsuitable for parole. Respondent has filed an answer, and petitioner has filed a traverse.

**BACKGROUND**

In 1993, petitioner was convicted in Los Angeles County Superior Court of second degree murder. He was sentenced to a term of 18 years to life in state prison. In 2002, when petitioner had served approximately nine years in prison, the Board found him unsuitable for parole. In unsuccessful habeas petitions filed in all three levels of the state courts, petitioner claimed that the Board's granting his request for postponement violated his constitutional rights.

**DISCUSSION**

**A.**    **Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C.

---

[1] At the time of the decision, the Board was called the California Board of Prison Terms.

G:\PRO-SE\MJJ\HC.05\marroquin.dny.wpd

§ 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).  Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Rice v. Collins, 126 S. Ct. 969, 975 (2006).

B.  Analysis of Claim

    1.  Evidence in Support of Parole Denial

Petitioner claims that the Board's decision violated his right to due process because the Board did not adhere to California law, and because there was no evidence to support the

decision.² A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see also Irons v. Carey, 479 F.3d 658 (9th Cir. 2007).³ The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the [administrative] board. See id. Additionally, the evidence underlying the Board's decision must have some indicia of reliability. McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations which guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." 15 Cal. Code Regs. § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. 15 Cal. Code Regs. § 2402(c)-(d).

The circumstances tending to show an inmate's unsuitability are: (1) the commitment

---

²This claim is set forth in the conclusion of the petition for review to the California Supreme Court, which petitioner attaches as an exhibit to the instant petition and to which he cites as setting forth the grounds for habeas relief he seeks in this court. (Petition at 6, Ex. D.)

³Respondent argues that the Ninth Circuit is wrong in finding Hill's "some evidence" requirement applicable to parole denials. This Court, of course, has no discretion to disregard or overrule applicable decisions from the Ninth Circuit.

offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. 15 Cal. Code Regs. § 2402(d). These circumstances are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case. 15 Cal. Code Regs. § 2404(c). Once the prisoner has been found suitable for parole, the regulations set forth a matrix to set a base term. 15 Cal. Code Regs. § 2403(a).[4]

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original). In sum, "the Board,

---

[4]The matrix provides three choices of suggested base terms for several categories of crimes: for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years, to a high of 19, 20 or 21 years, depending on certain facts of the crime. Id. at § 2403. One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See 15 Cal. Code Regs. § 2403(c).

exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071. The California Supreme Court's determination of state law is binding in this federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629 (1988).[5]

Here, the Board denied parole on the basis of petitioner's commitment offense, his prior social history, the psychological evaluation, and the opinion of the District Attorney.

        a.      Commitment Offense

Under state law, the Board may consider the gravity of the commitment offense in assessing an inmate's suitability for parole. Cal. Penal Code § 3041(b); 15 Cal. Code Regs § 2402(c)(1). The factors to be considered in determining whether the offense was committed in an "especially heinous, atrocious or cruel manner," so as to indicate unsuitability are whether: (1) "multiple victims were attacked, injured or killed in the same or separate incidents;" (2) the offense was committed in " a dispassionate and calculated manner, such as an execution-style murder;" (3) "the victim was abused, defiled or mutilated during or after the offense;" (4) the offense was committed in a manner demonstrating "an exceptionally callous disregard for human suffering;" and (5) "the motive for the crime is explicable or very trivial in relation to the offense." Id.

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable. "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone,

---

[5]In his third claim, petitioner asserts his right to due process was violated because the Board did not apply the matrix under California Penal Code § 3041(a) prior to determining whether he presented a continuing public danger under § 3041(b). As discussed above, Rosenkrantz explicitly held that such an application of § 3041 was proper as a matter of state law, a holding binding on this Court. As the Board's application of § 3041(b) prior to § 3041(a) did not violate state law, it certainly did not violate any state law interest that might be protected by due process.

G:\PRO-SE\MJJ\HC.05\marroquin.dny.wpd     5

can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense."). Moreover, the federal constitutional guarantee of due process does not preclude the parole board from relying on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability. Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to some evidence to deny parole).

The facts of petitioner's offense are as follows:[6]

1. **Summary of the Crime:** Viewed in accordance with the usual rules on appeal (People v. Barnes [1986] 42 Cal.3d 284, 303), the evidence established that in August of 1991, the victim Luis Silva and his girlfriend agreed to buy a car from Marroquin. Silva drove the car for several days and after discovering that it had a "lot of defects," he returned the car to Marroquin. He did not want the car back and told Silva that he wanted a thousand dollars ($1000.00) for the days the car was used. Silva replied that if he had the money, he would pay him for the car. Marroquin told Silva that "he would regret what he had done to him." On 1/13/92, in the city of Compton, Los Angeles County Sheriff's Office (LASO) deputies were flagged down by two men. They reported that an individual (later identified as Marroquin) had been shooting a gun. The two men, who also witnessed the incident, directed LASO deputies to where Marroquin was. He was observed to be standing in front of a Toyota truck, holding the hood open, with a gun in his left hand. He was ordered to drop the gun. Marroquin threw the gun into the vacant lot. In the process of placing Marroquin in the patrol car, other witnesses approached the LASO deputies stating that someone had been shot in front of the La Bajadita Bar. LASO deputies observed the victim, a male (later identified as Luis Silva) lying on this back. Upon closer observation, there appeared a gunshot would to the victim's left bicep. The victim was bleeding slightly and his jacket was stained with blood. The victim was then transported to Long Beach Memorial Hospital where he was pronounced dead on 1/14/92 at approximately 7:22 a./m. The cause of death was listed as internal hemorrhage. A witness, who was selling hot dogs from a stand outside the bar, heard Marroquin swearing at Silva and saying that he wanted to kill him. The witness did not see them fighting prior to Marroquin pulling out the gun. Also, the witness saw no menacing gestures on the part of Silva nor did she see anything in Silva's hands. The witness did not see or hear Silva break a bottle or use a bottle in a jabbing motion.[]

---

[6]These facts are set forth in the Life Prisoner Evaluation Report prepared for the Board's consideration at the 2002 hearing. (Resp. Ex. 9.)

G:\PRO-SE\MJJ\HC.05\marroquin.dny.wpd        6

|   |   |
|---|---|
| 1 | **2.** **Prisoner's Version:** Marroquin stated that the incident was an accident that he did not intend to do it and that in defense of himself, he shot the victim.  Marroquin state that Silva pulled him from behind and pushed him outside the bar.  He admits that he and Silva had problems before, about six months ago, over a car (Marroquin claims that he sold Silva a car and agreeing [sic] to make payments.  After a period of two weeks, Silva returned the car.  Marroquin asked for payments for the time Silva was in possession of the car, which he refused).  Once outside the bar, Marroquin stated that Silva challenged him to a fight.  During the argument, Marroquin stated that Silva attacked him with a knife and that he kicked the knife out of Silva's hand at which time he went to this car and got his gun while Silva was running towards his car.  Marroquin saw Silva drive by in a car, shouting obscenities, parked his car and came towards Marroquin with a broken bottle.  Marroquin stated that he tried to fight Silva off but Silva continued to attack and that is when Marroquin shot Silva.  Marroquin stated two hours prior to the incident, he had been drinking alcohol in the bar. |

(Resp. Ex. 6 at 1-2.)

The foregoing facts of the offense provided sufficient evidence that the murder was carried out in an "especially heinous, atrocious or cruel manner" under 15 Cal. Code Regs. § 2402(c)(1). Petitioner initially threatened to harm Silva after Silva returned the car.  When they were at the same bar several months later, there was evidence that petitioner followed Silva outside and began shouting obscenities at him.  (Resp. Ex. 6 a 11.)  There was also evidence that just prior to shooting Silva, petitioner stated "you're the type of guy that [I] would like to put a bullet through.  I'm going to kill you."  (Id.)  The gun did not fire initially, so petitioner pulled the slide back a second time and shot Silva from approximately two feet away.  (Id.)  The evidence of petitioner's threats, obscenities and statement to Silva prior to shooting, as well as the evidence he shot an unarmed Silva from two feet away after reloading the gun, indicate both a "callous disregard" for the victim, and that the murder was "calculated" within the meaning of 15 Cal. Code Regs. § 2402(c)(1).  In addition, petitioner's motive -- to seek payment for the use of his car for approximately two weeks – was very trivial in relation to the offense of murder.  Under these circumstances, there is "some evidence" that the commitment offense met the factors set forth in the state's regulations for indicating that the murder was committed in an "especially heinous, atrocious or cruel manner" such that petitioner was not suitable for parole.

The Court notes the concern expressed by the Ninth Circuit in Biggs v. Terhune that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the

G:\PRO-SE\MJJ\HC.05\marroquin.dny.wpd          7

offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." 334 F.3d 910, 916 (9th Cir. 2003). The Ninth Circuit has recently criticized this statement as beyond the scope of the dispute before the court: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. In any event, the challenged parole denial here took place after petitioner had served only 9 years, approximately half of his sentence's minimum term of 18 years. In Sass and Irons, where the petitioners had not yet served the sentence's minimum terms, the court found that the concerns raised in Biggs had not yet been reached and that parole could be denied solely based on the facts of the offense and the petitioner's criminal history. See, e.g., Irons, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole at fifth parole hearing after petitioner had served 16 years in prison, which was less than the minimum term); Sass, 461 F.3d at 1129 (same, for second and third parole hearings after petitioner had served 11 and 12 years in prison). Moreover, the challenged parole denial here was based on other evidence in addition to the commitment offense and criminal history, as described below. Therefore, the instant case does not implicate the concerns raised in Biggs.

### b. Additional Factors

The Board commended petitioner on his positive behavior in prison, including his lack of discipline,[7] his participation in Alcoholics Anonymous and in educational and vocational programs. (Resp. Ex. 6 at 73.) However, there was evidence of an unstable social history insofar as petitioner had been arrested for giving alcohol to a minor, had been subject to deportation orders for illegal entry into the United States, and had a history of alcohol abuse. (Id. at 29-34.) In addition, the psychological evaluation determined that petitioner presented a high degree of danger if he used alcohol again. (Id. at 71-73.) There was also evidence that petitioner had not accepted full responsibility for the crime, nor shown remorse. (Id.) Such evidence weighed against granting parole under the regulations. See 15 Cal. Code Regs. §§ 2402(c)(3) & (d)(2),(3). The Board also noted the opposition of the District Attorney to petitioner's release on parole. See Cal. Pen. Code § 3042.

---

[7]While in prison, petitioner had a relatively good disciplinary record, although he had been twice admonished for delaying lockup and removing lights/window coverings. (Resp. Ex. 6 at 36.)

Under the circumstances, there was "some evidence" that petitioner was unsuitable for parole under the factors set forth in California's statutes and regulations for determining parole suitability. Consequently, the Board's decision did not violate petitioner's right to due process, and the state court opinions upholding the Board's denial of parole are neither "contrary to" or an "unreasonable application of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Further, the Board's decision was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the finding of petitioner's unsuitability for parole. 28 U.S.C. § 2254(d)(2).

2. <u>Petitioner Was Not Denied Parole Based on an Anti-Parole Policy</u>

Petitioner claims that the Board denied parole pursuant to a policy of denying parole to all inmates convicted of murder. Even assuming petitioner could show the existence of such a policy, the transcript of the proceeding and the decision in this case show that the Board considered petitioner's suitability on an individual basis and in considerable detail. (Resp. Ex. 6.) The decision reflects this individualized treatment of petitioner's case. As described above, the decision was based on more than petitioner's commitment offense and his status as an inmate with an indeterminate sentence. Based on the records presented to the Court, there is no indication that the Board's decision was based on an "Anti-Parole Policy," as opposed to the particular factors of petitioner's case. As a result, habeas relief is not warranted on this claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk shall close the file.

IT IS SO ORDERED.

DATED: 12/18/07

MARTIN J. JENKINS
United States District Judge